THE PEOPLE *ex rel.* State Board of Health, Defendant in Error, *vs.* DAVID APFELBAUM, Plaintiff in Error.

*Opinion filed June 20, 1911—Rehearing denied October 4, 1911.*

1. CONSTITUTIONAL LAW—*section 6 of the Medical Practice act is not void for uncertainty.* Section 6 of the Medical Practice act of 1899, (Laws of 1899, p. 275,) authorizing the State Board of Health to refuse or to revoke licenses for certain causes therein specified, and, generally, for unprofessional or dishonorable conduct, is not void for uncertainty, particularly as to causes specified.

2. SAME—*neither the granting nor revocation of a license to practice medicine is an exercise of judicial power.* Neither the granting of a license by the State Board of Health to practice medicine nor the revocation of such license is an exercise of judicial power by the board, as the legislature has prescribed the qualifications for a license and the causes for its revocation, and the board acts merely as the body designated by the legislature to ascertain whether the qualifications are possessed or the causes for revocation exist.

3. SAME—*the State Board of Health is lawfully authorized to revoke its licenses.* The power of the State Board of Health to revoke its licenses for causes specified in section 6 of the Medical Practice act of 1899 was lawfully given, as it is no objection that the body which is empowered to grant or refuse a license be authorized to revoke it.

4. SAME—*due process of law does not necessarily imply judicial proceedings.* There is no vested right in any particular remedy or form of proceeding, and while orderly proceedings according to established rules which do not violate fundamental rights must be observed, a general law, administered in its regular course according to the form of procedure suitable to the nature of the case,

which conforms to the rules of right and affects all persons alike, is due process of law.

5. SAME—*provision of section 6 of Medical Practice act, concerning false advertising, is valid.* That part of section 6 of the Medical Practice act of 1899 which makes advertising under a false name ground for revoking a license is not unconstitutional, as it is a legitimate exercise of the police power in protecting the public against deception and fraud to require every physician to have a license granted by the State Board of Health in his own name and to practice or advertise under no other.

6. MEDICINE AND SURGERY—*power of State board to revoke license is not arbitrary.* The power given by the statute to the State Board of Health to revoke a license to practice medicine is not arbitrary or beyond the investigation of the courts, as the board cannot act without cause and the statute itself provides for notice and a hearing before a license can be refused or revoked.

7. SAME—*section 6 of act of 1899 was not repealed by the act of 1901.* Section 6 of the Medical Practice act of 1899 was not repealed by the act of May 11, 1901, which declares that certain acts by physicians shall be criminal offenses, as there is no such inconsistency between the two acts that both cannot stand.

8. SAME—*section 9 of Medical Practice act applies where license has been revoked.* Section 9 of the Medical Practice act, which makes it a penal offense to practice medicine without a license granted by State Board of Health, applies where a physician continues to practice after a license so granted has been revoked.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. WILLIAM N. COTTRELL, Judge, presiding.

ELIJAH N. ZOLINE, (BURRES & McKINLEY, of counsel,) for plaintiff in error:

A profession is property, and the deprivation of the right to pursue it is a punishment. *People* v. *Amos,* 246 Ill. 299; *Cummings* v. *Missouri,* 4 Wall. 277; *Czara* v. *Board of Medical Supervisors,* 25 App. Cas. (D. C.) 454; *Commonwealth* v. *Jones,* 10 Bush. 731; *In re Dorsey,* 7 Port. 293; *Barker* v. *People,* 3 Cow. 686.

The right to practice medicine being a property right, we contend that under the constitution of this State plain-

tiff in error could not be deprived of such right without a judicial hearing, and that the statute (Medical Practice act, sec. 6,) conferring such jurisdiction and judicial powers upon the State Board of Health is unconstitutional and void. *People* v. *Amos,* 246 Ill. 299; *Ex parte McNulty,* 77 Cal. 164; *People* v. *Chase,* 165 Ill. 527; *Hoagland* v. *Creed,* 81 id. 506; *Drainage District* v. *Smith,* 233 id. 424; *Belleville* v. *Turnpike Co.* 234 id. 428; *Green* v. *Red Cross Medical Service Co.* 232 id. 616; *Chicago* v. *Wells,* 236 id. 129; *Railway Co.* v. *People,* 212 id. 551.

There is no law in the State of Illinois punishing a physician for practicing medicine after revocation of his license. The statute punishes only for practicing medicine without first having procured a certificate to do so. Medical Practice act, sec. 13; *Ex parte McNulty,* 77 Cal. 164.

The clause prohibiting the advertising by a physician under a name other than his own is in conflict with sections 1, 2 and 4 of article 2 and section 22 of article 4 of the constitution of Illinois of 1870 and the fourteenth amendment to the constitution of the United States, because the right of a citizen to pursue his own calling confers the right to exercise his own judgment as to the manner of conducting and advertising his business, provided that such advertising is not done with a fraudulent purpose. *Ruhstrat* v. *People,* 185 Ill. 133.

Moses, Rosenthal & Kennedy, (Walter Bachrach, and Sidney S. Stein, of counsel,) for plaintiff in error, on petition for rehearing.

Charles Alling, Jr., (Charles G. Hoffman, of counsel,) for defendant in error:

The profession of medicine is not property. The right to practice it is a mere privilege, for the exercise of which the State, through its police power, may prescribe all such regulations as will secure the people against ignorance, in-

capacity, deception and fraud, and the deprivation of the privilege is not a punishment of the offender but a protection to the citizens of the State. *Dent* v. *West Virginia,* 129 U. S. 114; *Hawker* v. *New York,* 170 id. 189; *Reetz* v. *Michigan,* 188 id. 505; *Meffert* v. *Medical Board,* 66 Kan. 710; 195 U. S. 625; *Williams* v. *People,* 121 Ill. 84; *People* v. *Blue Mountain Joe,* 129 id. 370; *Christy* v. *Elliott,* 216 id. 31; *Kettles* v. *People,* 221 id. 221; *Douglas* v. *People,* 225 id. 536; *Gosnell* v. *State,* 52 Ark. 228; *Ex parte Whitney,* 144 Cal. 167; *Harding* v. *People,* 10 Colo. 387; *State* v. *Webster,* 150 Ind. 607; *State* v. *Edmunds,* 127 Iowa, 333; *Driscoll* v. *Commonwealth,* 93 Ky. 393; *State* v. *Bohemier,* 96 Me. 257; *Commonwealth* v. *Porn,* 196 Mass. 326.

The right to practice medicine being a mere privilege, the plaintiff in error can be deprived of such right by the Illinois State Board of Health in pursuance of the constitution and statutes of this State; and section 6 of the Medical Practice act, conferring such power on the State Board of Health, is valid and constitutional. *Douglas* v. *People,* 225 Ill. 536; *Kettles* v. *People,* 221 id. 221; *Spiegler* v. *Chicago,* 216 id. 114; *People* v. *Gordon,* 194 id. 560; *People* v. *Kipley,* 171 id. 44; *Trigger* v. *Drainage District,* 193 id. 230; *Maxwell* v. *People,* 189 id. 546; *George* v. *People,* 167 id. 447; *People* v. *Blue Mountain Joe,* 129 id. 370; *People* v. *Nelson,* 133 id. 565; *Owners of Lands* v. *People,* 113 id. 296; *People* v. *Dental Examiners,* 110 id. 186.

The prohibition against advertising by a physician under a name other than his own is not in conflict with sections 1, 2 and 4 of article 2 and section 22 of article 4 of the constitution of Illinois and the fourteenth amendment of the constitution of the United States. The State has, under its police power, the right to prescribe what is and what is not legitimate advertising. 30 Cyc. 1547; *People* v. *Gordon,* 194 Ill. 560; *Williams* v. *People,* 121 id. 84; *Christy* v. *Elliott,* 216 id. 31; *Bragg* v. *State,* 134 Ala. 165;

*Thompson* v. *VanLear,* 77 Ark. 506; *Spurgeon* v. *Rhodes,* 167 Ind. 1; *Medical College Ass'n* v. *Schrader,* 87 Iowa, 659; *State* v. *Kendig,* 133 id. 164; *State* v. *Wilhite,* 132 id. 226; *State* v. *Creditor,* 44 Kan. 565; *State* v. *Medical Examining Board,* 32 Minn. 324.

Mr. JUSTICE DUNN delivered the opinion of the court:

This writ of error has been sued out to reverse a judgment for $100 rendered against the plaintiff in error by the municipal court of Chicago as a penalty for practicing medicine without a license.

The plaintiff in error received the degree of doctor of medicine and surgery from the College of Physicians and Surgeons, and after having passed an examination received from the State Board of Health a license to practice medicine. June 21, 1910, the State Board of Health revoked this license, and, having practiced medicine thereafter, he was sued for the penalty provided by law. The license was revoked by virtue of section 6 of the Medical Practice act, for advertising under a name other than his own and other unprofessional and dishonorable conduct. The plaintiff in error contends that this section is void for uncertainty; was repealed by implication by an act of May 11, 1901; is unconstitutional because it confers judicial powers on the State Board of Health; violates sections 1, 2 and 4 of the bill of rights, section 22 of article 4 of the constitution and the fourteenth amendment to the constitution of the United States. He also insists that the record of the State Board of Health does not show sufficient cause for the revocation of the license, and that section 9, which makes it penal to practice medicine without a license, prescribes no penalty for practicing after the revocation of the license.

Section 6 is not void for uncertainty. It authorizes the refusal of the license for certain specific reasons and also generally for unprofessional and dishonorable conduct, and

provides that the license may be revoked for the same reasons. The reasons particularly named are certain enough, but it would scarcely be possible for the statute to catalogue specifically every act of unprofessional or dishonorable conduct which would justify the refusal or revocation of a license. In any event, the plaintiff in error here was found guilty of the specific offense of advertising under another name than his own, and as to this charge the statute is not uncertain.

The Medical Practice act, containing section 6 above mentioned, was passed in 1899. On May 11, 1901, an act of two sections was passed providing that it should be unlawful for any physician to practice medicine in another physician's name, or to hold himself out as another physician by advertisement, for the purpose of imposing upon or defrauding any other person, under penalty of fine and imprisonment. It is insisted that this act modifies, and by implication repeals, that part of section 6 of the Medical Practice act which prohibits advertising by a physician under a name other than his own. A later act will not be held to repeal a prior statute unless the two cannot be reconciled. There is no such inconsistency between these two acts that both cannot stand. The one deals with the case of a physician who practices under a false name, whether that of another physician or not and without regard to his motive, the penalty for which is the refusal or revocation of his license. The other deals with the physician who for fraudulent purposes practices under the name of another physician or holds himself out as another physician, the penalty being fine and imprisonment. The one act deals with the licensing of physicians to practice and does not create or define any criminal act; the other deals with the practice of physicians and declares that certain acts shall constitute criminal offenses.

Neither the granting nor the revocation of a license to practice medicine is the exercise of judicial power, as that

term is understood in reference to the distribution of the powers of government. It is not contended that the State has not the power to prescribe the qualifications of physicians practicing medicine and to punish unqualified persons engaging in such practice, and the existence of such power is not debatable. (*People* v. *Blue Mountain Joe*, 129 Ill. 370; *Williams* v. *People*, 121 id. 84; *Reetz* v. *Michigan*, 188 U. S. 505; 22 Am. & Eng. Ency. of Law,—2d ed.— 780.) The possession of the required qualifications must be ascertained by some authority, and the legislature has imposed this duty upon the State Board of Health. In the administration of the law the State Board of Health necessarily exercises discretion and judgment in determining whether or not an applicant possesses the required qualifications, and to that extent its action is judicial in character but it is not the action of a court or action appropriate for a court. It is similar in its nature to the acts of assessors in valuing property for taxation; of boards of review in reviewing such valuations; of clerks of courts and of sheriffs in approving bonds taken by them; of commissioners of highways in laying out and opening roads; of city councils in granting or revoking licenses to keep dramshops, or of superintendents of schools in granting or revoking teachers' certificates. In none of these cases does the tribunal engaged in the execution of the law exercise judicial power within the meaning of the constitution. "The power exercised is ministerial, only, although, as an incident to its exercise, the board is required to do a judicial act, or, rather, an act which is in its nature judicial. No law is construed or applied by the board and no legal rights are submitted to and adjudicated by it, without which, we have seen, judicial power is not exercised." (*Owners of Lands* v. *People*, 113 Ill. 296.) In that case are cited many cases illustrative of the distinction between the exercise of judicial power and of judgment and dis-

cretion in the performance of administrative or ministerial functions.

*Reetz* v. *Michigan, supra,* was a prosecution for a violation of the statute of Michigan of 1899 prohibiting the practice of medicine by unregistered persons. It was objected that the board of registration was given authority to exercise judicial powers, inasmuch as it might refuse a certificate of registration if it should find that no sufficient proof was presented that the applicant had been legally registered under an act of 1883. The court overruled this contention, and in doing so quoted with approval the following language from the opinion in the case of *People* v. *Hasbrouck,* 11 Utah, 291: "The objection that the statute attempts to confer judicial power on the board is not well founded. Many executive officers, even those who are spoken of as purely ministerial officers, act judicially in the determination of facts in the performance of their official duties, and in so doing they do not exercise judicial power as that phrase is commonly used and as it is used in the organic act in conferring judicial power upon specified courts. The powers conferred on the board of medical examiners are nowise different in character in this respect from those exercised by the examiners of candidates to teach in our public schools, or by tax assessors or boards of equalization in determining, for purposes of taxation, the value of property. The ascertainment and determination of qualifications to practice medicine by a board of competent experts appointed for that purpose is not the exercise of a power which appropriately belongs to the judicial department of the government." To the same effect, also, are *Wilkins* v. *State,* 113 Ind. 514, *State* v. *Hathaway,* 115 Mo. 36, and *France* v. *State,* 57 Ohio St. 1.

This court has never passed upon the power of the State Board of Health to revoke its certificates, though the existence of such power was plainly intimated in *People* v. *McCoy,* 125 Ill. 289, and *State Board of Health* v. *Ross,*

191 id. 87. In *State* v. *Medical Examiners,* 34 Minn. 387, it was held that there is no distinction between refusing to grant a license and revoking one already granted; that each is an exercise of the police power and the object in each case is identical,—to exclude an incompetent or unworthy person from the practice of medicine. Therefore the same body which may be vested with power to grant or refuse to grant a license may be vested with power to revoke it. So it was held in *Meffert* v. *Medical Board,* 66 Kan. 710, and *Traer* v. *State Board,* 106 Iowa, 559. The revocation of the license is not intended as a punishment for any offense committed, but for the protection of the public by the police power of the State. The statute has declared certain acts to constitute a disqualification for the practice of medicine, and when one has been ascertained to have done these acts, the body which is charged with the ascertainment and determination of the qualifications to practice medicine may deprive him of his license, either by refusing it or revoking it, as the circumstances may require. The power given the mayor to revoke a license to sell oil from wagons in the city of Chicago upon proof of violation of the ordinances of the city was held not to be a judicial power but one which might be properly conferred. (*Spiegler* v. *City of Chicago,* 216 Ill. 114.) The removal from office of a county treasurer by a county board is not the exercise of judicial power. *Donahue* v. *County of Will,* 100 Ill. 94; *Stern* v. *People,* 102 id. 540.

The part of section 6 which makes advertising under a false name a reason for refusing or revoking a certificate does not violate sections 1, 2 or 4 of article 2 or section 22 of article 4 of the State constitution or the fourteenth amendment of the Federal constitution. A citizen may advertise his business in any legitimate manner, but it is a legitimate exercise of the police power in protecting the public against the deception and fraud practiced by irresponsible pretenders and quack doctors, to require every

physician to have the license of the State Board of Health granted in his own name and to practice or advertise under no other. Due process of law does not necessarily imply judicial proceedings. Orderly proceedings according to established rules which do not violate fundamental right must be observed, but there is no vested right in any particular remedy or form of proceeding. A general law, administered in its regular course according to the form of procedure suitable and proper to the nature of the case, conformable to the fundamental rules of right and affecting all persons alike, is due process. (*Den* v. *Hoboken Land and Improvement Co.* 18 How. 272; *Kelly* v. *Pittsburgh,* 104 U. S. 78; *Ex parte Wall,* 107 id. 265.) The power of revocation given to the State Board of Health is not arbitrary or beyond the investigation of the courts. The board cannot, from mere caprice or without cause, revoke a certificate fairly issued upon sufficient evidence of the applicant's qualifications. (*People* v. *McCoy, supra.*) The statute itself requires notice and a hearing before any certificate can be refused or revoked.

The record of the State Board of Health shows that the plaintiff in error, upon notice given him, appeared before the board and a hearing was had upon charges of advertising under another name than his own and of using the United States mail for fraudulent purposes. The notice was given by the State Board of Health, and required the plaintiff in error to show cause why the certificate issued to him by the board and authorizing him to practice medicine should not be revoked for the unprofessional and dishonorable conduct particularized in these charges. It sufficiently appears from this notice that the charges were made against the plaintiff in error in his profession as a physician. He did not ask for a more specific charge but admitted that he had advertised under the name of Dr. Hoffman. The board found the plaintiff in error guilty under both charges and revoked his certificate for unpro-

fessional and dishonorable conduct. This record shows a specific charge, notice, hearing and the determination of the board thereon, and is sufficient to sustain the action taken.

In regard to the objection that section 9, which makes it penal to practice medicine "without a certificate issued by" the State Board of Health, does not apply to the case of one who has had a certificate issued to him, it seems sufficient to say that one whose certificate has been revoked is without a certificate as much as one to whom no certificate was ever issued.                *Judgment affirmed.*